DOUG WHITHAM *v.* STATE OF INDIANA.

[No. 1-976A157. Filed May 9, 1977.]

*Harry L. Zerbe,* of Lawrenceburg, *Bobby Jay Small,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Alembert W. Brayton,* Deputy Attorney General, for appellee.

ROBERTSON, C.J.—The defendant-appellant, Doug Whitham, appeals his conviction of delivery of a controlled substance,[1] to-wit: cocaine, for which he received a determinate sentence of eight (8) years. Whitham raises the following two issues for our review:

---

1. IC 1971, 35-24.1-4-1(a)(1) (Burns Supp. 1974). This statute has since been repealed. *See:* IC 1971, 35-24.1-4.1-1 *et seq.* (Burns Code Ed.).

(1) Whether the evidence adduced at trial is sufficient to overcome his entrapment defense?

(2) Whether the State of Indiana is barred from invoking judicial process to obtain a conviction in this cause?

The evidence most favorable to the State reveals that the Ripley County Commissioners contracted with an Ohio corporation, Narcotics Enforcement Team Inc. (N.E.T.), for the services of two agents to conduct an undercover narcotics investigaton in Ripley County. On March 28, 1975, Michael Long and Steven Welker, employees of N.E.T., were assigned to conduct the narcotics investigation in Ripley County. Subsequently, Long and Welker moved to Ripley County and obtained an apartment in Osgood, Indiana.

During the course of their undercover investigation, Long and Welker met Doug Whitham on March 30, 1975, in Versailles, Indiana. A week or two after this initial meeting, Whitham and four other individuals moved in with Long and Welker. Long and Welker testified that while Whitham was living with them they saw him sell and deliver various types of drugs to different people on more than one occasion. On April 16, 1975, Whitham offered to sell Long some cocaine for ten (10) dollars. Long agreed to purchase a packet of cocaine from Whitham and consummated the "buy" by giving him the money.

Subsequently, Long filed a probable cause affidavit setting forth the facts concerning the delivery of the controlled substance. The trial court determined that probable cause existed and issued an arrest warrant for Whitham on June 13, 1975. Whitham was arrested, tried by jury, and convicted of this offense.

Whitham initially argues that the trial court erred in over-ruling his motion for a directed verdict made at the close of all the evidence. He specifically contends that the evidence was insufficient to overcome the defense of entrapment since

there was no showing that the State had probable cause to suspect that Whitham was engaged in any illegal conduct prior to setting the trap.

At the time Whitham was tried and convicted, the rule governing the issue of entrapment required the State to prove that enforcement officials had probable cause to suspect that the accused was engaged in illegal conduct and was already predisposed to commit the crime. *Walker* v. *State* (1970), 255 Ind. 65, 262 N.E.2d 641; *Smith* v. *State* (1972), 258 Ind. 415, 281 N.E.2d 803.

The requirement that the State prove probable cause to suspect when entrapment is an issue was operative, although highly criticized and contrary to the federal rule, until very recently when our Supreme Court reexamined the rule in *Hardin* v. *State* (1976), 265 Ind. 635, 358 N.E.2d 134. In *Hardin,* our Supreme Court overruled the probable cause to suspect requirement established in *Walker* v. *State, supra.*

While Hardin does not specifically state that it is to be retroactive in its application, this Court in *Davila* v. *State* (1977), 172 Ind. App. 425, 366 N.E.2d 283, has interpreted it to be retroactive. Thus, Whitham's contention, that the trial prosecutor failed to prove beyond a reasonable doubt that probable cause to suspect existed, is without merit.

Whitham further challenges the sufficiency of the evidence to overcome the defense of entrapment on the grounds that the State failed to prove that he had sufficient propensity to commit the alleged crime absent governmental involvement.

The question of whether the accused had sufficient propensity or predisposition to commit the crime is one of fact for the jury to decide. *Hauk* v. *State* (1974), 160 Ind. App. 390, 312 N.E.2d 92. In the case before us, Long and Welker witnessed Whitham selling drugs to various people on a number of occasions.

Furthermore, Whitham approached Long and Welker at various times prior to April 16, 1975, and asked them to purchase drugs. In addition, Whitham was the instigator of the crime in question. This evidence would clearly establish that Whitham had a sufficient propensity and predisposition to commit the crime. Therefore, the jury's findings that Whitham had the necessary predisposition and that he was not the victim of entrapment are supported by sufficient evidence.

Whitham finally alleges that this Court must discharge him because "the conduct of the government's agents was so felonious and outrageous that due process principles and principles of supervisory power over such conduct by the judiciary bars the State from invoking the judicial process to obtain a conviction."

The argument advanced here raises the question of how an entrapment defense should be viewed. Two different approaches have evolved. These two approaches are succinctly defined and analyzed by Justice Stewart in his dissenting opinion in *United States* v. *Russell* (1973), 411 U.S. 423 at 440-441, 93 S.Ct. 1637 at 1647, 36 L.Ed.2d 366 at 378-379:

> "In *Sorrells* v. *Unitde States, supra,* and *Sherman* v. *United States, supra,* the Court took what might be called a 'subjective' approach to the defense of entrapment. In that view, the defense is predicated on an unexpressed intent of Congress to exclude from its criminal statutes the prosecution and conviction of persons, 'otherwise innocent', who have been lured to the commission of the prohibited act through the Government's instigation. *Sorrells* v. *United States, supra,* 287 U.S., at 448, 53 S.Ct., at 215. The key phrase in this formulation is 'otherwise innocent', for the entrapment defense is available under this approach only to those who would not have committed the crime but for the Government's inducements. Thus, the subjective approach focuses on the conduct and propensities of the particular defendant in each individual case: if he is 'otherwise innocent', he may avail himself of the defense; but if he had the 'predisposition' to commit the cime or if

the 'criminal design' originated with him, then—regardless of the nature and extent of the Government's participation—there has been no entrapment. Id., at 451, 53 S.Ct., at 216. And, in the absence of a conclusive showing one way or the other, the question of the defendant's 'predisposition' to the crime is a question of fact for the jury. The Court today adheres to this approach.

"The concurring opinion of Mr. Justice Roberts, joined by Justices Brandeis and Stone in the *Sorrells* case, and that of Mr. Justice Frankfurter, joined by Justices Douglas, Harlan, and Brennan, in the *Sherman* case, took a different view of the entrapment defense. In their concept, the defense is not grounded on some unexpressed intent of Congress to exclude from punishment under its statutes those otherwise innocent persons tempted into crime by the Government, but rather on the belief that 'the methods employed on behalf of the Government to bring about conviction cannot be countenanced.' *Sherman* v. *United States, supra,* 356 U.S., at 380, 78 S.Ct., at 324. Thus, the focus of this approach is not on the propensities and predisposition of a specific defendant, but on 'whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power.' Id., at 382, 78 S.Ct., at 825. Phrased another way, the question is whether—regardless of the predisposition to crime of the particular defendant involved—the governmental agents have acted in such a way as is likely to instigate or create a criminal offense. Under this approach, the determination of the lawfulness of the Government's conduct must be made—as it is on all questions involving the legality of law enforcement methods—by the trial judge, not the jury."

Our Supreme Court has expressly adopted the subjective approach first formulated in *Sorrells* v. *United States* (1932), 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 and reaffirmed in *Sherman* v. *United States* (1958), 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, and *Russell* v. *United States, supra. Hardin* v. *State, supra.* Thus, we focus upon the conduct and propensities of the accused and not upon the nature and extent of the government's participation. Therefore, if the accused is found to have the sufficient predisposition to commit the crime, entrapment will not exist.

Having previously determined that the evidence adduced at Whitham's trial was sufficient to show the necessary predisposition to commit. the crime, we must affirm the jury's verdict and the trial court's judgment thereon.

Affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 362 N.E.2d 486.